UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 20-016-DCR |
| ) | |
| V. ) | |
| ) | |
| AARON MICAH JAMISON, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Some fraudulent schemes, particularly schemes as fruitful as the one to which Jamison pleaded guilty to facilitating, are complex. Jamison's was not. Over a four-year period, his companies, Micah Group, LLC, and Micah Group Environmental Contractors, LLC, (collectively "Micah Group"), accepted payments from Kentucky for substandard work or work which was not performed. When the state discovered problems at over 300 Micah Group worksites, it incurred additional losses hiring other companies to redo the work. Later investigation revealed that Jamison knew the work failed to comply with state regulations.

Jamison admitted to the scheme but attempted to complicate things at sentencing. The bulk of the nearly two-day hearing focused on how much of the State's loss was due to Jamison's fraud. He suggested that the state's loss was circumscribed by the plea agreement's inclusion of only one worksite. And he also objected to being held responsible for the state's

remediation costs. Ultimately, based on the evidence presented at sentencing and the relevant Guidelines, the Court determined that Jamison caused losses at approximately 308 locations.[1]

Now, Jamison requests release while he pursues the same arguments on appeal. But the questions raised by his motion are squarely answered by the plea agreement and the evidence presented at sentencing. Because the standard for release pending appeal requires a closer question than the ones Jamison raises, *United States v. Pollard*, 778 F.2d 1177, 1181 (6th Cir. 1985), his motion will be denied.

## I.   FACTUAL BACKGROUND

Jamison was the president and founder of Micah Group. Among other services, Micah Group performed environmental remediation services for underground storage tanks, which included installing groundwater monitoring wells. The Kentucky Energy and Environment Cabinet ("EEC") compensated Micah Group for the efforts. The Kentucky Division of Waste Management, Underground Storage Tank Branch, a division of the EEC, oversaw the remediation efforts and, as particularly relevant here, determined when no further action was necessary. When no further action was necessary, the monitoring wells at the site had to be properly abandoned. Kentucky regulations provide that a monitoring well must be abandoned under the supervision of a certified well driller, and the driller must certify as much. 401 Ky. Admin. Regs. 6:350.

The Micah Group, LLC, Retirement Plan was a benefit plan established to provide retirement benefits to Micah Group employees through a 401(k). Jamison, as the Plan's

---

[1] The Court only needed to make an approximate finding because Jamison's arguments largely disputed the application of a sentence enhancement, as explained in detail below.

fiduciary and trustee, was empowered to determine when employees' contributions would remit to the Retirement Plan.

Micah Group also engaged in transportation of hazardous waste materials to disposal facilities. By Kentucky statute and regulation, any person that stores hazardous waste must first receive a permit. Ky. Rev. Stat. § 224.46-520; 401 K.A.R. 39:090. Micah Group was not permitted to store hazardous waste.

On January 22, 2020, an Information naming Jamison was filed by the United States alleging conspiracy to defraud the in violation of 18 U.S.C. §371, conversion of employee benefit payments in violation of 18 U.S.C. § 664, and improper storage of hazardous waste in violation of 42 U.S.C. § 6928(d)(2)(A). [Record No. 1] Based on the parties' pre-Indictment negotiations, Jamison pleaded guilty the same day. [Record No. 6]

The aim of the conspiracy was to submit false reimbursement requests from Micah Group to the EEC. [Record No. 8, pp. 3-5] The plea agreement acknowledged that the United States could prove beyond a reasonable doubt that Micah Group improperly certified that well-abandonments were performed at the direction of a certified well driller when, in fact, no certified employee was present. [*Id.*] Micah Group submitted photos and other documentation purporting to entitle it to reimbursement for work that was later discovered to have been performed improperly. Jamison either signed or authorized an employee to sign these requests on his behalf.

The plea agreement further acknowledged that, for a period in 2016, Jamison knowingly withheld nearly $40,000 in employee contributions from the Retirement Plan and instead converted it for personal use. [Record No. 8, p. 3] And in 2017, Jamison failed to remit employee contributions to the Micah Group, LLC, Health Plan, which caused Micah Group

employees to lose their health benefits. Participating employees ultimately incurred nearly $5,500 in costs from denied health insurance claims.

Finally, the defendant acknowledged in the plea agreement that, for nearly a month in 2017, Micah Group illegally stored hazardous waste at a facility in Lexington, Kentucky, without a permit. [Record No. 8, pp. 5-6] The waste was due to be transported to a disposal facility in Indiana, but the facility refused to accept any shipments because Micah Group had fallen behind in payments.

## II. PROCEDURAL HISTORY

Jamison initially raised the arguments in support of the current motion as objections to his Presentence Investigation Report ("PSR"). The offense-level calculation in his PSR contained a 14-level increase for the total loss amount pursuant to U.S.S.G. § 2B1.1(b)(1)(H). The enhancement was based on the calculated loss amount for the improper well-abandonments. The PSR included a total loss amount in excess of $550,000 but less than $1,500,000. *See* U.S.S.G. §2B1.1(b)(1)(H). Both the amount paid to Micah Group and the amount Kentucky incurred to remedy the improper abandonment were included in the total loss amount.

Jamison made three objections to the loss amount that are relevant here. First, he objected that the plea agreement mentioned only one site of improperly abandoned wells on which Jamison was aware. Only 24 wells were discovered on this site, significantly less than the 379 wells included in the loss amount calculation. Second, Jamison objected that the loss amount provided for a double recovery because it included both the costs paid to Micah Group and the costs Kentucky incurred in correcting the improperly performed work. And third, he

suggested that a civil settlement with the state should offset the loss amount. [*See* Record No. 23, p. 3]

The Court took up these objections at the outset of the sentencing hearing. The undersigned determined, based on "all the testimony that was presented, as well as information in the plea agreement, [Jamison's] admissions in the plea agreement," and the entire record, that the total loss amount for the improperly abandoned wells was approximately $652,141.30. [Record No. 53, pp. 12-15] Witness testimony convinced the Court that the poor work underlying these claims was attributable to Jamison because he "was the one that was calling the shots." [*Id.* at p. 26] Thus, his "claim of lack of knowledge is not supported by the evidence that has been submitted in the case." [*Id.* at p. 27] Further, the state's remediation costs were properly "included as reasonably foreseeable pecuniary harm" under the United States Sentencing Guidelines. [*Id.* at pp. 32-33]; *see* U.S.S.G. § 2B1.1, cmt. n.3. Finally, the Court concluded that "the amount that the defendant argue[d] would constitute double recovery" would not be offset under the Guidelines.[2]

Ultimately, the total loss amount was determined as $694,769.82, the 14-level increase was properly applied, and Jamison's resulting Guidelines range was 46-57 months. [*See* Record No. 53, pp. 50-51.] Nevertheless, the Court imposed a sentence of 36 months, or ten months below the bottom of the Guidelines range, because of Jamison's "positive characteristics." [*Id.* at p. 91] And in light of the large amount of restitution, the undersigned did not impose a fine because of concerns about Jamison's ability to pay.

---

[2]     *See* U.S.S.G. § 2B1.1 cmt. n.3(F)(v) ("In a case involving a scheme in which . . . goods for which regulatory approval by a government agency . . . was obtained by fraud, loss shall include the amount paid for the property, services or goods transferred, rendered, or misrepresented, with no credit provided for the value of those items or services.")

The Court then considered the amount of restitution. It initially determined that restitution owed for the well-abandonments was $637,879.90, which included a reduction of $14,261.40 that had been withheld from Micah Group by the state after it discovered the poor work. [Record No. 53, p. 119] The Court overruled Jamison's request to offset this amount a civil judgment in favor of the state against Micah Group in the amount of $268,990.95. [*See* Record No. 36-7] The United States argued that the judgment had been set aside against Jamison personally, and it received assurance from the state that it was not pursuing the judgment. [*Id.* at pp. 113-14] And Jamison's counsel "c[ould] not say" that the judgment, reflected in a lien on Jamison's property, was related to the abandoned wells at issue. [*Id.* at p. 115] Thus, the undersigned concluded that the judgment was "not a setoff in the sense of that it's something that has been enforced or liquidated to pay a claim," and it would not apply here. [*Id.* at p. 116]

Therefore, the total amount of restitution was $640,638.31, reflecting the amount due for the well-abandonment scheme and an additional $2,758.41 due to victims of the Health Plan conversion.

In his request for release, Jamison contends that his restitution and sentence resulted from a "gross miscalculation" in his PSR. [Record No. 55, p. 4] He again suggests that the loss amount should include only those well sites mentioned in the plea agreement. And he states that "nothing in the PSR details that Mr. Jamison had the *mens rea* to commit a conspiracy." [*Id.*] Concerning restitution, he alleges that the Court "erroneously did not allow" him to contest the number of abandoned wells attributable to the loss amount at sentencing. [*Id.* at p. 5] He concludes that these errors give rise to a "substantial likelihood that Mr. Jamison's sentence and amount of restitution will be decreased." [*Id.*]

The United States responded in opposition, contending that the loss amount was properly calculated. [Record No. 56, p. 3] It noted that the wells included in the PSR were only those that were found to be improperly abandoned "during a period of time that Jamison admitted in his plea agreement that a certified well driller was not on site." [*Id.*] The Government additionally contends that testimony presented at sentencing indicated Jamison's "control over and knowledge of Micah Group's finances and work." [*Id.* at p. 5] It concludes that Jamison's arguments were "considered and rejected" at sentencing. [*Id.*]

### III. LEGAL ANALYSIS

The Bail Reform Act provides the circumstances under which a defendant may be entitled to release pending appeal. 18 U.S.C. § 3143(b). The Court must first find "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(b)(1)(A). Jamison was released on bond throughout the pendency of this matter, and the government concedes that Jamison satisfies the first requirement. [Record Nos. 6; 56, p. 2] Second, the Court must find that Jamison's appeal is

> not for the purpose of delay and raises a substantial question of law or fact likely to result in--(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1)(B).

Jamison's motion and the Government's response focus on whether the appeal raises a substantial question. [Record Nos. 55, p. 2; 56, pp. 1-2] To determine whether an appeal raise a substantial question of law or fact, the Court must ask two more questions: is the question raised "a close one that could go either way"; and is it "so integral to the merits of the

conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor?" *Pollard*, 778 F.2d at 1182. (quotation omitted). The standard is not so demanding that the Court must find that it committed reversible error. *Id.* Rather, it requires the undersigned to "essentially evaluate the difficulty of the question he previously decided." *United States v. Sutherlin*, 84 F. App'x 630, 631 (6th Cir. 2003) (quoting *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir.1986)). Further, there is a "presumption against release pending appeal," and the burden is on Jamison to establish the substantiality of the question. *United States v. Sutherlin*, 84 F. App'x 630, 631 (6th Cir. 2003); *United States v. Vance*, 851 F.2d 166, 168-69 (6th Cir. 1988).

Jamison has not carried his burden in this case. Except for citing the standard of review for his appeal, his arguments for release do not rely on any Sixth Circuit precedent indicating his appeal may go either way. His concerns regarding the Court's applications of the Sentencing Guidelines will be reviewed on appeal under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). And for a loss calculation under U.S.S.G. § 1B1.1, "a court need only make a 'reasonable estimate' of the loss." *United States v. Mahmud*, 541 F. App'x 630, 635 (6th Cir. 2013) (quoting *United States v. Washington*, 715 F.3d 975, 984 (6th Cir. 2013)).

At sentencing, the Court walked the parties through its calculations to determine the approximate loss amount and whether it fell within the wide range of the applicable Guideline. [Record No. 53, pp. 12-15] Jamison raised no objections to the method the Court used at sentencing. His motion fails to identify anything that may constitute an abuse of the Court's discretion to determine the loss amount. Thus, he has failed to raise a close question.

Jamison continues to suggest that the Court attributed too many worksites to him at sentencing. This argument is more semantic than substantive—even acknowledging that the plea agreement mentions only one worksite *by name*, it states that the fraudulent scheme lasted four years. [*See* Record No. 8, p. 4 ("between the years of 2013 and 2017, abandonments would be left for field crews despite the fact that a certified well driller could not be on site supervising").] The Court directly addressed this argument at sentencing. The undersigned acknowledged that there was not "a straight connection" from the evidence to the exact time period of the fraudulent scheme. [Record no. 53, p. 22] But the evidence allowed the Court to "go back" and "reconstruct" the events.[3] [*Id.*] For example, financial difficulties that Micah Group experienced informed the Court as to what "instructions that he would be giving to individuals in the field", and the testimony of an Environmental Protection Agency investigator, who interviewed a number of Micah Group employees, indicated that false claims were being submitted as early as 2013. [*Id.* at p. 22, 24] Thus, the Court concluded that "the defendant was fully aware that this type of improper abandonment was taking place [in 2013], and he was directing the activities based upon cash flow problems that the company was having at that time." [*Id.* at p. 28] Therefore, the contention that "[t]here is no evidence to support the sentence enhancement" is flatly contradicted by the record, and Jamison has made no showing that his appeal casts doubt on the Court's determination.

Jamison relies on the same arguments to suggest that the amount of restitution was improperly inflated, but they fare no better. In this case, the loss amount and restitution owed

---

[3] The undersigned also acknowledged that relying on hearsay evidence requires establishing that "the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3. The testimony relied on was based on interviews conducted under the threat of "criminal consequences." [Record No. 53, p. 22]

were nearly the same amount, except for an amount the state had withheld from Micah group after it discovered that Jamison was misrepresenting the quality of Micah Group's work. [*See* Record No. 53, p. 119.] Thus, the Court's analysis of the accuracy of the loss amount forecloses Jamison's arguments against the restitution owed.

The only additional contention raised regarding restitution—that the Court "erroneously did not allow Mr. Jamison to contest these figures during the Sentencing hearing"—is unsupported by the record. [Record No. 55, p. 5] In fact, the Court split Jamison's sentencing hearing into two days. At the outset of the first part of the hearing, the undersigned acknowledged that there were "quite a few objections to get through in this case" before proceeding to hear argument on each. [Record No. 52, p. 8] Moreover, the Court allowed Jamison to raise *additional* objections at the hearing despite the fact that they were untimely. Thus, Jamison's threadbare assertions of error are insufficient to create a substantial question that would entitle him to release.

Finally, the Court notes that even if Jamison is successful on appeal, it is unlikely that he would receive a lower sentence. As noted above, he received a variance below the Guidelines range because the 28 U.S.C. § 3553(a) factors weighed in his favor. [Record No. 53, p. 91] If the loss amount were found to be lower, such that the 14-level increase did not apply, his offense level would still be increased. Under Section 2B1.1 of the Guidelines, the level of the increase varies with the loss amount, with the lowest increase beginning at $6,500. U.S.S.G. § 1B1.1(b)(1)(A)-(P). Only if the loss amount were found to be less than $150,000, a fourth of the amount attributed to Jamison, would Jamison have received a sentence *above* his Guidelines range. *Id.* There is no question raised by his appeal that would significantly

diminish the loss amount. Thus, it is unlikely that his appeal would ultimately result in a lower sentence.

## IV.     CONCLUSION

The undersigned was not struck by the difficulty of the questions presented at Jamison's sentencing and doubts that he will raise a difficult question on appeal. *See Sutherlin*, 84 F. App'x at 631. The fact that extensive evidence and calculations were necessary to determine the loss amount may, at first glance, tend to obscure the straightforward nature of the question Jamison raises. But the fact remains that a preponderance of the evidence at sentencing favors holding Jamison responsible for over 300 improperly abandoned wells. Nothing in Jamison's motion creates sufficient doubts about this conclusion such that he should be released pending appeal. Accordingly, it is hereby

**ORDERED** that Defendant Aaron Jamison's motion for release pending appeal [Record No. 55] is **DENIED**.

Dated: January 19, 2021.



Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky